UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

MELINDA L. TIJERINA, §
§
    Plaintiff, §
VS. § CIVIL ACTION NO. 7:19-CV-285
§
ISIDRO GUERRA, *et al*, §
§
    Defendants. §

## ORDER & OPINION

The Court now considers the first "Motion to Quash [Defendant Molano, Inc.'s] Deposition on Written Questions Requests and Plaintiff's Motion for Protective Order"[1] (hereafter, "first motion to quash") and the second "Motion to Quash [Defendant Molano, Inc.'s] Deposition on Written Questions. . ."[2] (hereafter, "second motion to quash") filed by Melinda L. Tijerina ("Plaintiff"). The Court also considers the "Motion to Compel Plaintiff's Medical and Employment Authorizations and Motion to Compel the Production of Documents from Plaintiff's Providers"[3] (hereafter, "motion to compel") filed by Molano, Inc. (hereafter, "Defendant Molano"), the response[4] in opposition filed by Plaintiff, and Defendant Molano's reply.[5] The further considers the "Unopposed Motion for Leave to File Amended Answer[s]"[6] (hereafter, "motion for leave") filed by Defendant Molano and Isidro Guerra (hereafter,

---

[1] Dkt. No. 21.
[2] Dkt. No. 30.
[3] Dkt. No. 22. Only the motion to compel was filed by Defendant Molano individually. All other motions were filed jointly by both Defendants: Defendant Molano and Defendant Guerra.
[4] Dkt. No. 23.
[5] Dkt. No. 25. Plaintiff also filed a response to Defendant Molano's reply to Plaintiff's response. Dkt. No. 29. Local Rule 7.4 does not provide a mechanism by which a party may respond to a reply to a response. As discussed later in this Order, the Court declines to consider this response due to the extensive arguments already contained in the motion to quash, motion to compel, Plaintiff's response to the motion to compel, and Defendant Molano's reply to Plaintiff's response. Dkt. Nos. 22–25.
[6] Dkt. No. 20.

"Defendant Guerra"). Finally, the Court considers the "Amended Motion to Extend Scheduling Order Deadlines"[7] (hereafter, "amended motion for extension of time") filed by Defendants and Plaintiff's response in opposition.[8]

After considering the motions, record, and relevant authorities, the Court **DENIES** Plaintiff's first[9] and second[10] motions to quash. The Court **GRANTS IN PART** and **DENIES IN PART** Defendant Molano's motion to compel.[11] The Court also **GRANTS** Defendants' motion for leave[12] and **GRANTS IN PART** and **DENIES IN PART** Defendants' amended motion for extension of time.[13]

## I.    BACKGROUND

This is a personal injury case arising from a February 9, 2018 vehicle collision wherein Defendant Guerra, driver of a tractor trailer owned by Defendant Molano, allegedly rear-ended Plaintiff's vehicle in Edinburg, Texas.[14] Plaintiff filed this action in state court, bringing negligence claims against both Defendants and seeking damages "in an amount more than $1,000,000.00."[15] Plaintiff alleges that as a result of the collision, she sustained "serious injuries and damages."[16] Defendants properly removed this action on the basis of diversity jurisdiction on August 16, 2019.[17]

---

[7] Dkt. No. 27. Defendants filed an original motion to extend scheduling order deadlines, which they later amended to account for Plaintiff's designation of an expert witness. Dkt. Nos. 24, 27. The Court considers Defendants' notice of the amendment and the amended motion. Dkt. Nos. 26, 27.

[8] Dkt. No. 31.

[9] Dkt. Nos. 21.

[10] Dkt. No. 30.

[11] Dkt. No. 22.

[12] Dkt. No. 20.

[13] Dkt. No. 24.

[14] Dkt. No. 1-3 p. 2–3 (Plaintiff's Original Complaint). The case was removed from the 370th District Court of Hidalgo County, Cause No. C-2957-19-G. Dkt. No. 12 p. 2, ¶ 3.

[15] Dkt. No. 1-3 at 4–8.

[16] *Id.* at 2, ¶ 11.

[17] Plaintiff is a citizen of Texas, Defendant Guerra is a citizen of Florida, and Defendant Molano, Inc. is a Florida corporation. Dkt. No. 1-3 at 1–2.

The parties appeared for an initial pretrial and scheduling conference on October 3, 2019, during which the Court orally set a schedule for the case.[18] Thereafter, the Court issued a Scheduling Order delineating the following deadlines: February 7, 2020 for the designation of Plaintiff's experts; March 13, 2020 for the designation of Defendant's experts; April 30, 2020 for the close of discovery; May 15, 2020 for all pretrial motions; July 10, 2020 for the parties' joint pretrial order; and August 17, 2020 for the parties' final pretrial conference.[19]

On October 3, 2019, Defendant Molano sent Plaintiff its first set of requests for production, which Plaintiff refers to as "depositions on written questions" or "depositions on written questions requests."[20] Therein, Defendant Molano requested that Plaintiff produce various documents, photographs, and information.[21] Defendant Molano also requested that Plaintiff complete an attached medical and billing records authorization form and an employment records authorization form.[22] Defendant Molano's proposed medical and billing records authorization form is limited to Plaintiff's medical and billing records from the five years prior to the accident.[23] The proposed medical and billing records authorization form also gives Plaintiff the option to exclude certain records from disclosure "on the ground that such health care information is not relevant to the damages being claimed or [Plaintiff's] physical, mental or emotional condition. . ."[24] Defendant Molano's proposed employment records authorization form, however, is unlimited in time and scope, and even includes entities "to whom [Plaintiff]

---

[18] Minute Entry dated October 3, 2019.
[19] Dkt. No. 19.
[20] Dkt. No. 22-5 (Defendant's Exhibit E).
[21] *See id.*
[22] *Id.* at 10–14.
[23] Defendant Molano's proposed form states that the date of the accident was March 5, 2016. *Id.* at 11. This date is incorrect, as the date of the accident at issue in this case is February 9, 2018.
[24] *Id.* at 11.

has submitted employment applications or with whom [Plaintiff] has ever been in any way associated".[25]

Plaintiff responded on November 4, 2019.[26] In her first set of responses to Defendant Molano's requests for production, Plaintiff includes the following statement as a response to many requests:

> Plaintiff objects to this request to the extent that it is vague, ambiguous, overly broad and unduly burdensome. Plaintiff further objects to this request to the extent that it seeks information that is irrelevant to the claims made by the lawsuit and that is unlikely to lead to the discovery of admissible evidence. It is not properly limited in scope in terms of time period and/or subject matter.[27]

In fact, Plaintiff responds to twelve out of twenty-seven requests for production with this same form paragraph or language that mirrors it.[28] To most other requests, Plaintiff states that she "will supplement" or "has no responsive documents."[29] Plaintiff later submitted supplemental responses to Defendant Molano's requests for production on March 3, 2020.[30]

Plaintiff did not sign Defendant Molano's attached medical authorization forms. Rather, on January 10, 2020, Plaintiff executed two medical records authorizations and one employment records authorization of her own. Confusingly, Plaintiff's medical records authorizations were broader in time than Defendant Molano's proposed authorization forms. Plaintiff authorized Stone Ridge Physical Therapy and Open MRI of McAllen to release medical records ranging from January 1, 2012 to February 9, 2018; and Dr. Daniel Guerra, MD and Family Physicians

---

[25] *Id.* at 14.
[26] *See* Dkt. No. 25-6. (Defendant's Exhibit F).
[27] *Id.*
[28] *See id.*
[29] *Id.*
[30] Dkt. No. 27 at 5, ¶ 2.10 (citing Dkt. No. 27-3).

Clinic to release medical records ranging from January 1, 2012 to present.[31] However, Plaintiff did not authorize the release of her billing records.

Plaintiff's employment records authorization was much more limited than Defendant Molano's proposed form. Plaintiff authorized her employer, University of Texas Medical Branch Clinic, to disclose personnel records "that specifically reference any physical limitation, health condition, or injury since January 1, 2009" and payroll records "which reflect missed work since January 16, 2016."[32]

On January 29, 2020, Defendant Molano issued subpoenas to the following medical providers for medical records, diagnostic imaging, and billing records ranging from January 1, 2012 to February 9, 2018: Stone Ridge Physical Therapy; Open MRI of McAllen; Next Generation Orthopedic & Spine Institute (hereafter, "Next Generation"); Dr. Daniel Guerra, MD; and Family Physicians Clinic.[33] Defendant Molano also issued subpoenas to Plaintiff's employer for personnel records from January 1, 2009 to present and payroll records from January 1, 2016 to present.[34]

---

[31] Dkt. No. 25-5 at 1–4. While it is unclear from the authorizations attached to the motions to quash and compel which medical providers are authorized to provide Defendant Molano with Plaintiff's records, Plaintiff limited one authorization to "all medical reports or records, x-rays, MRIs, diagnostic studies, clinical abstracts, histories, charts, and other information relevant to my care, treatment or hospitalizations from January 1, 2012 to February 9, 2018. . ." Dkt. No. 22-7 at 2–3 (Defendant's Exhibit G). Plaintiff limited the other medical records authorization to "[a]ny and all medical reports or records, x-rays, MRIs, diagnostic studies, clinical abstracts, histories, charts, and other information relevant to my care, treatment or hospitalizations from January 1, 2012 to present. . ." *Id.* at 4–5. Plaintiff later clarified that her medical records "authorizations were limited to Stone Ridge, Open MRI and Family Physicians Clinic for the time period January 1, 2012 to February 9, 2018." Dkt. No. 23 at 5, ¶ 4.8. After both parties repeatedly attached blank authorizations that did not show which medical providers Plaintiff authorized to release her medical records, Defendant Molano clarified in its reply to Plaintiff's response to its motion to compel that Plaintiff authorized Stone Ridge and Open MRI to release medical records ranging from January 1, 2012 to February 9, 2018; and Dr. Daniel Guerra, MD and Family Physicians Clinic to release medical records ranging from January 1, 2012 to present. Dkt. No. 25-5 at 1–4. This was the first document clarifying who Plaintiff's authorizations were directed to.
[32] Dkt. No. 22-8 (Defendant's Exhibit H).
[33] Dkt. No. 21 at 10–26; 33–47.
[34] *Id.* at 27–32.

Thereafter, on February 7, 2020, Plaintiff filed the first motion to quash requesting the Court quash Defendant Molano's discovery requests and issue a protective order in favor of Plaintiff.[35] In lieu of a response, Defendant Molano filed its motion to compel on February 17, 2020.[36] Plaintiff filed a response on March 9, 2020[37] and Defendant Molano replied on March 12, 2020.[38] On March 11, 2020, Defendants filed the motion for extension of time, requesting the Court continue all Scheduling Order deadlines in light of the parties' discovery disputes. Defendants amended the motion for extension of time on March 12, 2020.[39]

Finally, on March 20, 2020, Defendant Molano subpoenaed Plaintiff's pharmacy, an H-E-B in Edinburg, Texas, requesting any and all prescription and/or pharmaceutical records from January 1, 2012 to present.[40] On March 24, 2020, Plaintiff filed a second motion to quash requesting the Court quash Defendant Molano's request for Plaintiff's pharmaceutical records.[41] On March 31, 2020, Plaintiff responded in opposition to Defendants' amended motion for extension of time.[42]

In sum, the instant Order addresses the parties' discovery dispute, particularly the scope of Defendant Molano's access to Plaintiffs' medical and employment records. The Court turns to its analysis.

---

[35] Dkt. No. 21. Plaintiff routinely refers to the discovery requests as the requests of "Defendants," implying that the requests came from Defendant Molano and Defendant Guerra. However, Defendant Molano characterizes all discovery requests as requests from Defendant Molano alone and filed its motion to compel individually. Thus, the Court will assume the discovery requests at issue in this case come from Defendant Molano alone.
[36] Dkt. No. 22.
[37] Dkt. No. 23.
[38] Dkt. No. 25.
[39] Dkt. No. 27.
[40] Dkt. No. 30-1. All subpoenas discussed in this Order do not specify whether they were issued by Defendant Molano, Defendant Guerra, or both Defendants. Similarly, Plaintiff characterizes all discovery requests as discovery requests from "Defendants," but Defendant Molano characterizes all discovery requests and requests from Defendant Molano alone and filed its motion to compel individually. Thus, the Court will assume the discovery requests at issue in this case come from Defendant Molano alone.
[41] See Dkt. No. 30.
[42] Dkt. No. 31.

## II. CAUTIONARY NOTE

As an initial matter, the Court first addresses Defendants' Rule 26(a)(2) expert disclosures,[43] which were filed with the Court on March 13, 2020. According to the U.S. District Court for the Southern District of Texas' Local Rule 5.4, "[d]epositions, interrogatories, answers to interrogatories, requests for admission, production, or inspection, responses to those requests, and other discovery material shall not be filed with the clerk." Accordingly, the Court finds that Defendants' expert disclosures constitute discovery material filed in violation of Local Rule 5.4. The Court thus **STRIKES** Defendants' filing.[44] The Court reminds the parties to ensure their future filings comply with Federal *and* Local Rules.

Moreover, in *both* motions to quash, Plaintiff indicates she "attempted to confer with Defendants in a good-faith effort to resolve the [parties'] dispute" over discovery but that "[b]ecause [she] was unable to confer with Defendants, the dispute remains unresolved."[45] Plaintiff goes on to state that "[d]uring the conference, the parties discussed limitations on Defendants' Deposition on Written Questions. The parties were unable to agree on the appropriate time period for the Depositions on Written Questions."[46] In the same paragraphs of two separate motions, Plaintiff states that she was unable to confer with Defendants and then states that the parties did in fact confer. The Court cautions the parties that all pleadings need to be consistent and must include a Certificate of Conference in compliance with Federal Rule of Civil Procedure ("Rule") 37(a)(1).[47] The Court now turns to Plaintiff's motions to quash and Defendant Molano's motion to compel.

---

[43] Dkt. No. 28.
[44] *Id.*
[45] Dkt. No. 23 at 7; Dkt. No. 30 at 4–5.
[46] *Id.*
[47] FED. R. CIV. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without

## III.    FIRST MOTION TO QUASH

In the first motion to quash, Plaintiff seeks a protective order and requests the Court quash Defendant Molano's requests for Plaintiff's medical and employment records. Although it is difficult for the Court to discern, Plaintiff appears to request that the Court quash and protect Plaintiff from all of Defendant Molano's requests for production and subpoenas to Plaintiff's medical providers and employer, despite having authorized many of her providers to release similar records to Defendant Molano.[48] Because Plaintiff has executed medical records authorizations for four out of five medical providers and her employer that are nearly identical to Defendant Molano's subpoenas to those entities, it is unclear why Plaintiff seeks to quash Defendant Molano's subpoenas. However, Plaintiff has not authorized Next Generation to release her medical records and has not authorized any medical provider to release her billing records. Rather, Plaintiff claims that she "has produced billing records for treatment she received after the collision in question."[49] Plaintiff objects to any discovery of any billing records predating the February 9, 2018 accident on the grounds that they "are completely irrelevant and not discoverable."[50]

### a. Legal Standard

Rule 26 governs discovery between parties. Pursuant to Rule 26, at the onset of the case a party has a duty to disclose "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses. . ."[51] Parties may obtain discovery on:

---

court action."). The Court notes that Defendant Molano's motion to compel does include a Certificate of Conference in compliance with Rule 37. Dkt. No. 22 at 10, ¶ 5.1.
[48] Dkt. No. 21 at 1–4.
[49] *Id.* at 6, ¶ 5.1.
[50] *Id.*
[51] FED. R. CIV. P. 26 (a)(1)(A)(ii).

> [A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[52]

In order to prevail on a motion for protective order or successfully resist a motion to compel, a party must specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of discovery, that a discovery request would impose an undue burden or expense, or that a discovery request is otherwise objectionable.[53] The party resisting discovery must show specifically how each discovery request is not relevant or how each request is overly broad, burdensome, or oppressive."[54]

Pursuant to Rule 45, the Court must quash or modify a subpoena that (1) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (2) subjects a person to undue burden.[55] Where a party seeks to quash a subpoena, the party bears the burden of demonstrating "that compliance with the subpoena would be 'unreasonable and oppressive.'"[56] The facts of the case, the party's need for the documents, and the nature and importance of the litigation should be considered in determining whether a subpoena is reasonable.[57] "To determine whether the subpoena presents an undue burden, [courts] consider the following factors: (1) relevance of the information requested; (2) the need of the party for the

---

[52] *Id.* at 26(b)(1).

[53] *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

[54] *See O'Bryant v. Walgreen Co.*, No. 19-60363, 2020 WL 996464, at *5 (5th Cir. 2020) (citing *McLeod*, 894 F.2d at 1485) ("[T]he party resisting discovery must show specifically how. . .each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." (internal quotations omitted)).

[55] FED. R. CIV. P. 45(d)(3).

[56] *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818–19 (5th Cir. 2004) (quoting *Barnes Found. v. Township of Lower Merion*, 1997 WL 169442, at *4 (E.D.Pa. Apr.7, 1997)).

[57] *See id.*

documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."[58] If the entity subject to the subpoena is a non-party, the Court may also consider the expense and inconvenience to the non-party.[59] Where the subpoena is facially overbroad, the Court may find that a subpoena is unduly burdensome.[60]

### b. *Legal Analysis*

Plaintiff argues that Defendant Molano's requests constitute an "inappropriate fishing expedition. . ."[61] Plaintiff alleges Defendant Molano's requests are "harassing, overly broad, and seek documents that neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and violate Plaintiff's constitutional right to privacy as well as state law privileges provided under [Texas Rules of Evidence] 509 and 510."[62] Plaintiff does not specify what discovery she believes to be harassing or overbroad. Plaintiff only states in her response to Defendant's motion to compel that the billing records predating the February 9, 2018 accident records are "completely irrelevant and not discoverable."[63]

Plaintiff fails to make any specific argument as to the relevance or proportionality of a particular discovery request. Rather, Plaintiff broadly argues that Defendant Molano's requests, presumably in the form of both requests for production and subpoenas, are overly burdensome and harassing. Plaintiff fails to even specify whether she seeks to quash the depositions on written questions, the subpoenas, or both.

---

[58] *Id.* (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)).
[59] *See id.* (citing FED. R. CIV. P. 45).
[60] *Id.* (citing *Williams*, 178 F.R.D. at 109).
[61] Dkt. No. 21 at 4.
[62] *Id.* at 5.
[63] Dkt. No. 23 at 6, ¶ 5.1. The parties' inconsistent arguments regarding the scope of Defendant Molano's request for billing records are described in footnote 68 of this Order.

Plaintiff certainly fails to prove her entitlement to a protective order and fails to persuade the Court that it should quash Defendant Molano's discovery requests. In order to prevail on a motion for protective order or successfully resist a motion to compel, Plaintiff must specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of discovery, that a discovery request would impose an undue burden or expense, or that a discovery request is otherwise objectionable.[64] Plaintiff makes no specific objections or arguments as to any of Defendant Molano's requested discovery.

Plaintiff also fails to meet her burden of demonstrating why compliance with the subpoenas would be unreasonable and oppressive.[65] While Plaintiff suggests for a moment that the information is privileged,[66] she admits to providing most of it to Defendant Molano and even executed medical and employment records authorizations very similar in scope to Defendant Molano's subpoenas. Plaintiff refused to sign Defendant Molano's proposed medical records authorization form, and although it included access to Plaintiff's billing records, the proposed authorization form was narrower in time than Plaintiff's own authorizations.[67] Plaintiff executed medical authorization forms for four out of five medical providers that are similar in time and scope to Defendant Molano's subpoenas. Plaintiff authorized Stone Ridge Physical Therapy and Open MRI of McAllen to release medical records ranging from January 1, 2012 to February 9, 2018; and Dr. Daniel Guerra, MD and Family Physicians Clinic to release medical records ranging from January 1, 2012 to present.[68] Similarly, Defendant Molano issued subpoenas to the following medical providers for medical records and diagnostic imaging ranging from January 1, 2012 to February 9, 2018: Stone Ridge Physical Therapy; Open MRI of McAllen; Next

---

[64] *Carr*, 312 F.R.D. at 469 (citing *McLeod*, 894 F.2d at 1485).
[65] *Wiwa*, 392 F.3d at 818–19 (5th Cir. 2004) (quoting *Barnes*, 1997 WL 169442 at *4).
[66] Dkt. No. 22 at 5.
[67] Dkt. No. 22-5 at 10–13.
[68] *Id.* at 1–4.

Generation; Dr. Daniel Guerra, MD; and Family Physicians Clinic.[69] It is unclear why Plaintiff would seek to quash the subpoenas to Stone Ridge Physical Therapy; Open MRI of McAllen; Dr. Daniel Guerra, MD; and Family Physicians Clinic after authorizing Defendant Molano to receive medical records from these providers. The Court can only discern that Plaintiff seeks to avoid Defendant Molano's obtaining Plaintiff's billing records prior to the accident.

While Plaintiff does not authorize any entity to release her billing records as requested by Defendant Molano, Plaintiff also fails to include any specific argument as to why Defendant Molano's requests for Plaintiff's billing records should be quashed. Plaintiff states that she "produced billing records for treatment she received after the collision in question" and simply argues that "billing statements from medical treatment received prior to the February 9, 2018 are irrelevant.[70] Considering Plaintiff's lack of argument otherwise, the Court finds it unnecessary to quash Defendant Molano's requests for Plaintiff's billing records.

Accordingly, the Court **DENIES** Plaintiff's motion to quash[71] and finds that Plaintiff is not entitled to a protective order. The Court now turns to Plaintiff's second motion to quash.

---

[69] Dkt. No. 21 at 10–26; 33–47.

[70] *Id.* at 6, ¶ 5.1. The Court must address yet another glaring inconsistency in the parties' pleadings. Plaintiff's first motion to quash seeks to quash Defendant Molano's depositions on written questions and subpoenas for billing records from all five of Plaintiff's medical providers ranging from February 9, 2018 to present. Dkt. No. 21 at 3. Plaintiff claims the requests also came through Defendant Molano's records service, Ontellus. This range of dates is contrary to the subpoenas themselves, which request billing records from "01/12/2012 to 02/09/2018." Dkt. No. 22-10 at 34¬–60. Plaintiff goes on to argue that Defendant Molano's request for billing records from Plaintiff's medical providers predating the February 9, 2018 accident are irrelevant and not discoverable. Yet, it appears from the subpoenas that Defendant Molano does not request billing records from dates prior to the accident. Defendant Molano does little to clear up this discrepancy. Defendant Molano states that Plaintiff alleges "that Defendant [Molano] has attempted to obtain Plaintiff's 'billing records concerning medical treatment received prior to collision.' This is incorrect. . .Defendants attempted to subpoena Plaintiff's 'complete billing records from 2/09/18 to present,' which corresponds to the date of the accident in question to present." Dkt. No. 25 at 6, ¶ 2.5. This statement is indisputably false. Defendant Molano itself attaches the subpoenas issued to Plaintiff's medical providers for Plaintiff's billing records and they request records from "01/01/2012 to 02/09/2018." Dkt. No. 22-10 at 34–60. Whether Defendant Molano only requested billing records ranging from February 9, 2018 to present through Defendant Molano's record retrieval service, Ontellus, the Court cannot discern from the record. The parties have not attached proof of this request. However, it is clear to the Court that the parties themselves do not know what they have requested or received from one another.

[71] Dkt. No. 22.

## IV.    SECOND MOTION TO QUASH

Plaintiff filed the second motion to quash on March 24, 2020.[72] While Defendants' time to respond has not expired, the Court considers the motion as soon as practicable in light of the parties' impending deadlines and the Court's ruling on the parties' other discovery disputes.[73]

Plaintiff's second motion to quash is somehow more convoluted than the first. Plaintiff titles the second motion to quash "Plaintiff's Motion to Quash Defendants' Deposition On Written Questions Regarding Melinda Tijerina," but the motion itself seeks to quash Defendant Molano's requests for production *and* subpoena of Plaintiff's pharmacy.[74] The motion also seeks a protective order.[75] Moreover, Plaintiff copies and pastes the argument from her first motion to quash into the second motion to quash, nearly verbatim. Plaintiff once again fails to show specifically how Defendant Molano's request for the pharmaceutical records is not relevant or how each request is overly broad, burdensome, or oppressive.[76] Plaintiff also fails to demonstrate that compliance with the subpoena would be unreasonable and oppressive.[77] As opposed to the first motion to quash, the second motion to quash fails to even make an effort at arguing with specificity. Thus, the Court **DENIES** the second motion to quash.[78] The Court now turns to Defendant Molano's motion to compel.

---

[72] *See* Dkt. No. 30.
[73] L.R. 7.2.
[74] *See* Dkt. No. 30.
[75] *Id.* at 1. Within the motion, Plaintiff characterizes the motion as "Plaintiff's Motion to Quash and Motion for Protective Order." It is unclear whether Plaintiff requests the Court quash Defendant Molano's requests for production as to pharmaceutical records, quash Defendant Molano's subpoena for the records, or issue a protective order in favor of Plaintiff.
[76] *See O'Bryant,* No. 19-60363, 2020 WL 996464, at *5 (citing *McLeod*, 894 F.2d at 1485).
[77] *Wiwa*, 392 F.3d at 818–19 (quoting *Barnes Found*, 1997 WL 169442, at *4).
[78] Dkt. No. 30.

## V.    MOTION TO COMPEL

In the motion to compel, Defendant Molano "requests the Court enter an Order compelling Plaintiff to execute and produce a medical records authorization and an employment records authorization, unrestricted in time and scope, to allow Defendant Molano to fully investigate Plaintiff's claims, medical history, prior injuries, and pre-existing conditions predating the date of accident."[79] Alternatively, if the Court does not order its requested, unrestricted records authorizations, Defendant Molano requests the Court enter an order "denying Plaintiff's [first motion to quash], and compelling the production of Plaintiff's medical, billing, radiology and employment records from Plaintiff's [medical] providers and employer."[80]

The Court first notes that Defendant Molano's proposed medical and billing records authorization form is not unlimited in time and scope.[81] In fact, as the Court has already noted in this Order, the proposed form is limited to Plaintiff's medical and billing records from the five years prior to the accident.[82] The proposed medical authorization also gives Plaintiff the option to exclude certain records from disclosure "on the ground that such health care information is not relevant to the damages being claimed or [Plaintiff's] physical, mental or emotional condition . . ."[83] In contrast, Defendant Molano's proposed employment records authorization form is unlimited in time and scope, and even includes entities "to whom [Plaintiff] has submitted employment applications or with whom [Plaintiff] has ever been in any way associated."[84]

---

[79] *Id.* at 1, ¶ 1.1.
[80] *Id.*
[81] Dkt. No. 22-5 at 10–13.
[82] Defendant Molano's proposed form states that the date of the accident was March 5, 2016. *Id.* at 11. This date is incorrect, as the date of the accident at issue in this case is February 9, 2018.
[83] *Id.* at 10–13.
[84] *Id.* at 14.

### a. Legal Standard

While a party seeking to compel discovery from another should ensure its discovery requests are not unduly burdensome at the time of submission, a party moving to compel discovery "may need to make its own showing of many or all of the Rule 26(b)(1) proportionality factors," such as the needs of the case, the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[85] However, "while it is a good practice for a movant to explain the relevance and proportionality of its discovery requests, and while a failure to appropriately address Rule 26(b)(1) proportionality factors may be determinative in a proportionality analysis and result in the motion to compel being denied on its merits, '[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.'"[86]

### b. Legal Analysis

Defendant Molano argues that the Court should compel Plaintiff to produce records authorizations unlimited in time and scope on the grounds that Plaintiff was involved in two prior accidents that may have contributed to the damages claimed in the instant case.[87] Defendant Molano claims that Plaintiff's limited authorizations are insufficient on the basis that "[t]he [c]rash [r]eport notations and photos of Plaintiff's vehicle both indicate that the accident in

---

[85] *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 595 (N.D. Tex. 2017) (citing *Carr*, 312 F.R.D. at 467); *see also* FED. R. CIV. P. 26(b)(1).
[86] *Id.* at 595.
[87] *See generally* Dkt. No. 22.

question was a minor impact and strongly suggest that Plaintiff suffered from prior injuries or pre-existing medical condition(s). . ."[88]

Defendant Molano attaches the search results of a Texas Crash Records Information System search linking Plaintiff's driver's license number to three motor-vehicle accidents on August 9, 2012; February 11, 2015; and February 9, 2018.[89] The February 9, 2018 crash report provides that Plaintiff was not injured.[90] The crash report also provides that the vehicle damage rating was "11-LBQ-1," which Defendant Molano claims "indicat[es] damage to the left back quarter with a severity of '1' on a scale of '0-7.'"[91] Yet, Defendant Molano states that Plaintiff claims she "'sustained serious injuries' to her neck and back as a result of the accident, and has produced medical records that indicate she requires significant/major neck surgery, specifically an anterior cervical discectomy and fusion."[92] Due to the lack of injury or damage to Plaintiff, as well as Plaintiff's two prior accidents, Defendant argues that "there is good cause to further investigate Plaintiff's past medical history and obtain her pre-accident medical records to evaluate how those incident[s] affected her medical condition. . ."[93]

In response to Defendant Molano's motion to compel, Plaintiff admits that she "sustained injuries to her neck and back as a result of a different motor-vehicle collision" in 2012.[94] However, Plaintiff contends that she provided to Defendant Molano medical authorizations for four out of five medical providers authorizing the release of medical records ranging from January 1, 2012 to February 9, 2018.[95] Plaintiff claims that copies of her medical records held by

---

[88] *Id.* at 6, ¶ 3.3. Defendant attaches the crash report for the Court's reference. Dkt. No. 22-2 at 4–5.
[89] *See generally* Dkt. No. 22-11.
[90] Dkt. No. 22-2 at 4.
[91] Dkt. No. 22 at 2, ¶ 2.2.
[92] *Id.* at 3, ¶ 2.3 (citing Dkt. No. 22-4, Plaintiff's medical record from Next Generation Orthopedic, produced in discovery on October 4, 2019).
[93] Dkt. No. 22 at 6–7, ¶ 3.3.
[94] Dkt. No. 23 at 4–5, ¶ 4.3.
[95] *Id.* at 5, ¶ 4.8 (citing Dkt. No. 22-7, Defendant Exhibit G); *see also* Dkt. No. 25-5.

Next Generation have already been provided to Defendants Molano, but does not specify the dates of the records provided.[96] Plaintiff also provides that she has "produced billing records for treatment she received after the collision in question" and argues that billing statements from medical treatment received prior to the February 9, 2018 are irrelevant.[97]

In reply, Defendant Molano states that "[Plaintiff's response to Defendant's motion to compel] is the first time in the life of this case that Plaintiff has acknowledged the existence of a pre-existing neck and back condition and that she received treatment for same before the accident in question."[98] Defendant Molano proceeds to allege that Plaintiff has frustrated the discovery process for months by refusing to adequately respond to Defendant Molano's discovery requests.[99] Plaintiff filed a response[100] to Defendant's reply to Plaintiff's response to Defendant's motion to compel, which the Court declines to consider in light of the plethora of arguments provided by the parties.

The Court first notes that the parties' arguments regarding whether the Court should compel discovery are insufficient. First, Defendant Molano requests the Court order Plaintiff to execute a medical records authorization unlimited in time and scope, but Defendant Molano itself did not request this from Plaintiff. Rather, Defendant Molano requested Plaintiff execute a

---

[96] *Id.* at 4–5, ¶¶ 4.1, 4.4. This appears to be correct, as Defendant Molano attaches a medical record from Next Generation dated December 11, 2018 and provides that Plaintiff produced the document during discovery on October 4, 2019, one day after Defendant Molano served Plaintiff its first set of requests for production. Dkt. No. 22-4.

[97] *Id.* at 6, ¶ 5.1

[98] Dkt. No. 25 at 2–3, ¶ 2.1.

[99] *Id.* Defendant states that "Plaintiff's Answers to Defendant's First Set of Interrogatories (dated 11/04/19), disclosed that Plaintiff "suffered injuries to her neck and back" as a result of the accident in question, but refused to disclose the name of the medical providers that treated her in the last ten years. Likewise, Plaintiff's Responses to Defendant's First Set of Requests for Production (dated 11/04/19), included some medical records for treatment received after the accident in question, but refused to produce any records reflecting any pre-existing conditions. On March 3, 2020, Plaintiff provided her First Supplemental Responses to Defendant Molano's First Request for Production and produced some medical records from 2012 – 2016, evidencing neck and back treatment related to a prior injury. In light of Plaintiff's actions in withholding information and documents, Defendant reiterates its request to compel Plaintiff to produce an executed medical and employment records authorization to allow Defendant to independently obtain all of these records." *Id.*

[100] Dkt. No. 29.

proposed records authorization limited to Plaintiff's medical and billing records from the five years prior to the accident.[101] Defendant Molano does not explain why Plaintiff's executed medical and employment records authorizations are insufficient.

Second, both parties include broad arguments that do not address specific discovery requests. Due to the haphazard nature of the parties' pleadings, the Court is unable to even discern what information has actually been provided to Defendant Molano and what information needs to be compelled from Plaintiff or Plaintiff's medical providers and employer. Thus, the Court is forced to consider each of Defendant Molano's requests individually to determine whether to compel the information. The parties' pleadings reflect childish disputes and a lack of good faith effort to confer and resolve these matters without intervention by the Court. Should the parties choose to file similarly deficient pleadings regarding discovery disputes in the future, the parties will be subject to sanctions. The Court now turns to each of Defendant Molano's requests to determine whether each request should be compelled.

    i.  *Medical and Employment Records Authorizations, Unlimited in Time and Scope*

As the Court has previously noted, Defendant Molano requests the Court order Plaintiff to execute a medical records authorization unlimited in time and scope, but Defendant Molano itself did not request this from Plaintiff. Rather, Defendant Molano requested Plaintiff execute a proposed records authorization limited to Plaintiff's medical and billing records from the five years prior to the accident.[102]

---

[101] Dkt. No. 22-5 at 10–13. Defendant Molano's proposed form states that the date of the accident was March 5, 2016. *Id.* at 11. This date is incorrect, as the date of the accident at issue in this case is February 9, 2018.
[102] Dkt. No. 25-5 at 10–13.

Defendant Molano is correct that Plaintiff's medical records, while typically privileged, are subject to discovery because Plaintiff has placed her injuries at issue in the case.[103] However, Defendant Molano fails to show why the Rule 26(b)(1) proportionality factors weigh in favor of Defendant Molano receiving access to *all* of Plaintiff's medical and employment records. Defendant Molano does not specifically address why the time and scope of the records authorizations already provided by Plaintiff would not allow Defendant Molano to investigate the aforementioned claims regarding Plaintiff's past accidents, considering that Plaintiff's first accident occurred on August 9, 2012 and Plaintiff has authorized Defendant Molano's receipt of records beginning on January 1, 2012. Although Plaintiff's authorizations exclude billing records and records from Next Generation, Defendant does not argue why the absence of these documents warrants blanket authorizations completely unlimited in time and scope. Accordingly, the Court **DENIES** Defendant Molano's request that the Court compel Plaintiff to produce records authorizations that are unlimited in time and scope.

### ii. Defendant Molano's Requests

Defendant Molano further requests that the Court compel Plaintiff's medical providers and employer to produce Plaintiff's medical, radiology, billing, and employment records as requested by Defendant Molano's subpoenas. Defendant Molano argues that this information is "directly relevant to the disputed issues of causation, the extent of Plaintiff's injuries, and whether Plaintiff suffered or reported any related injuries in the years before the accident."[104] Defendant Molano further argues that "the records requested are certainly relevant and are expected to shed light on Plaintiff's medical history, prior injuries, prior work restrictions,

---

[103] *McKnight v. Blanchard*, 667 F.2d 477, 481 (5th Cir. 1982) (holding that because plaintiff's physical condition was "put at issue by his demands" the trial court was able to order plaintiff to execute a medical authorization).
[104] Dkt. No. 22 at 8, ¶ 3.7.

earning capacity, and preexisting conditions predating the date of accident."[105] The Court

separately considers the requests for (1) medical records, radiology imaging, and billing records.;

and (2) employment records.

1. Medical Records, Radiology Imaging, and Billing Records

In the early stages of discovery Defendant Molano requested Plaintiff complete a medical

records authorization form authorizing all of her medical providers to release medical and billing

records relating to the accident, ranging from five years prior to the accident to present.[106]

Instead, Plaintiff authorized Stone Ridge and Open MRI to release medical records and radiology

imaging ranging from January 1, 2012 to February 9, 2018; and Dr. Daniel Guerra, MD and

Family Physicians Clinic to release medical records and radiology imaging ranging from January

1, 2012 to present.[107] It is unclear to the Court why Plaintiff refused to execute Defendant

Molano's proposed authorization and opted to execute her own medical records authorizations

broader in time but limited to certain medical providers. The Court can only discern that Plaintiff

seeks to avoid disclosing her billing records predating the accident in question and the records

from Next Generation.

Pursuant to Rule 26, Plaintiff has a duty to disclose all documents in her possession or

control that she may use to support her claims or defenses at the onset of the case.[108] Even if all

of the documents encompassed in Defendant Molano's proposed medical records authorization

form will not be used by Plaintiff in support of her claims or defenses, they are surely relevant to

---

[105] *Id.* at 9, ¶ 3.7.
[106] Dkt. No. 22-5 at 10–13.
[107] Dkt. No. 25-5 at 1–4. Plaintiff provides that Dr. Daniel Guerra, MD is the doctor who treated her at Family Physicians Clinic and states that she has already provided a medical records authorization for Family Physicians Clinic. Dkt. No. 23 at 4–5, ¶¶ 4.1, 4.4.
[108] *See* FED. R. CIV. P. 26 (a)(1)(A)(ii).

Defendant Molano's defense and proportional to the needs of the case.[109] Moreover, the documents Plaintiff apparently seeks to avoid disclosing to Defendant Molano – the billing records from all of her medical providers predating the accident and medical records from Next Generation – are also relevant to Defendant Molano's defense because Plaintiff herself admits to suffering from a prior back injury resulting from a prior car accident in 2012. Thus, Plaintiff has a duty to disclose the documents encompassed in Defendant Molano's proposed medical records authorization form. While the Court would ordinarily seek to avoid ordering a party to execute a document, the Court finds that Plaintiff's refusal to do so when Defendant Molano made its request in October was an attempt to frustrate discovery.

Accordingly, the Court **GRANTS** Defendant Molano's motion to compel and **ORDERS** Plaintiff to execute a medical and billing records authorization form authorizing release of records from January 1, 2012 to the present in accordance with this order. However, Defendant Molano's proposed form encompasses all medical and billing records from the five years prior to the accident but contains the incorrect date of the accident. Defendant Molano's form states that the accident took place on March 5, 2016, when the accident actually occurred on February 9, 2018.[110] Thus, the Court **ORDERS** Defendant Molano to serve an amended medical and billing records authorization form with the correct accident date and consistent with this order to Plaintiff by **Friday, April 3, 2020** and **ORDERS** Plaintiff to execute said form by **Friday, April 10, 2020.** After executing the authorization, to the extent there are specific medical records or a particular medical provider whose records Plaintiff believes should be excluded from discovery, pursuant to the terms of the records authorization it is Plaintiff's duty to specifically identify those records or that medical provider to Defendant Molano and to specifically explain why the

---

[109] *Id.* at 26(b)(1) (allowing for discovery of all material "relevant to any party's claim or defense and proportional to the needs of the case.").
[110] Dkt. No. 25-5 at 11.

records are not discoverable. The parties must then confer in good faith prior to seeking the intervention of this Court.

2. Employment Records

In contrast, Defendant Molano's proposed employment records authorization form is virtually unlimited in time and scope, and even includes entities "to whom [Plaintiff] has submitted employment applications or with whom [Plaintiff] has ever been in any way associated".[111] Plaintiff did not execute this proposed authorization and instead drafted her own authorization authorizing her employer to issue to Defendant Molano personnel records "that specifically reference any physical limitation, health condition, or injury since January 1, 2009" and payroll records "which reflect missed work since January 16, 2016."[112] Defendant Molano subsequently issued subpoenas to Plaintiff's employer for personnel records from January 1, 2009 to present and payroll records from January 1, 2016 to present.[113]

Although Defendant Molano does not specifically address why the scope of the already provided authorization is insufficient, the Court finds that Plaintiff's limitation on her employer's disclosure of payroll records from January 1, 2016 to present is too narrow considering Plaintiff's past medical history and prior accidents dating back to 2012.

Accordingly, the Court **ORDERS** Plaintiff to execute an authorization for her employer, the University of Texas Medical Branch Clinic, to release to Defendant Molano "all payroll records, time sheets, and/or records reflecting hours worked, pay rates and records which reflect missed work" since January 1, 2012, as described in Plaintiff's employment records authorization.[114] Defendant Molano shall serve on Plaintiff an amended authorization form

---

[111] *Id.* at 14.
[112] Dkt. No. 22-8 at 2.
[113] Dkt. No. 22-10 at 27–32.
[114] Dkt. No. 22-8 at 2.

consistent with this order by **Friday, April 3, 2020** and Plaintiff shall execute said form by **Friday, April 10, 2020.** The Court now turns to Defendants' motion for leave to amend answers.

## VI.    MOTION FOR LEAVE TO AMEND ANSWERS

Defendants Molano and Guerra request the Court grant them leave to amend their answers to reflect "[n]ew evidence that has come to light after reasonable discovery. . ."[115] Plaintiff is unopposed to Defendants' motion.[116]

Rule 15(a)(2) provides that the Court should freely give leave to amend "when justice so requires."[117] In determining whether to allow leave to amend a pleading, courts examine whether there was 1) undue delay; 2) bad faith or dilatory motive; 3) repeated failure to cure deficiencies by previous amendments; 4) undue prejudice to the opposing party; and 5) futility of the amendment.[118] In the absence of any of these factors, the Court should freely grant the requested leave.[119] The decision of whether to grant leave to amend lies within the Court's sound discretion.[120]

The Court finds none of the warning factors present here. Defendants do not seek amendment in bad faith or with dilatory motive. Amendment here will not result in any significant delay. Moreover, the Court finds amendment by Defendants would not prejudice Plaintiff, particularly considering Plaintiff's lack of opposition. Defendants' amendment would not be futile, as Defendants would have the opportunity to file an answer reflecting new discovery and asserting additional defenses.

---

[115] Dkt. No. 20 at 2, ¶ 6.

[116] *Id.* at 3.

[117] FED. R. CIV. P. 15(a)(2); *see Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted) (noting that the language of Rule 15(a) "evinces a bias in favor of granting leave to amend").

[118] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)).

[119] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[120] *Smith*, 393 F.3d at 595 (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).

In sum, leave to amend is proper. The Court **GRANTS** Defendants' motion for leave to amend answers[121] and **ORDERS** Defendants to file their first amended answers by **Monday, April 6, 2020.** The Court now turns to Defendants' amended motion for extension of time.[122]

## VII.    AMENDED MOTION FOR EXTENSION OF TIME

Defendants request an extension of "90-120" days for all of the Court's Scheduling Order deadlines.[123] Defendants filed an original motion for extension of time[124] on March 11, 2020, two days prior to their March 13, 2020 deadline to designate experts, requesting an extension of "90-120" days for all of the Court's Scheduling Order deadlines.[125] Plaintiff filed a response in opposition to the amended motion for extension of time on March 31, 2020.[126]

In the amended motion for extension of time, Defendants request an extension of "90-120 days" for all of the parties' deadlines in order to "allow Defendants to obtain the medical and employment records requested from Plaintiff in discovery, which is the subject of Defendant's pending Motion to Compel, to secure Plaintiff's deposition after receipt of these records, and to designate appropriate experts and produce reports based on the information obtained through discovery."[127] One ground for Defendants' original motion was that Plaintiff failed to designate experts by her February 7, 2020 deadline.[128] However, on March 12, 2020, Defendants filed an amended motion for extension of time, informing the Court that Plaintiff contacted Defendants to clarify that she had in fact served her expert designations on Defendants on February 7, 2020.[129] Defendants allege in the amended motion that "[b]ecause Plaintiff has refused to provide the

---

[121] Dkt. No. 20.
[122] Dkt. No. 27.
[123] *See id.*
[124] Dkt. No. 24.
[125] *See* Dkt. No. 19.
[126] Dkt. No. 31.
[127] Dkt. No. 27 at 6, ¶ 3.2.
[128] Dkt. No. 24 at 5, ¶ 2.10.
[129] Dkt. Nos. 26, 27.

information and materials requested and has consistently frustrated Defendants' efforts to investigate Plaintiff's claims and medical history, Defendants have been unable to do the necessary due diligence to determine what experts to designate before the March 13, 2020 deadline."[130]

In response, Plaintiff argues Defendants' allegations regarding her refusal to produce documents throughout discovery are "simply false and misleading to the Court."[131] Plaintiff states that she has "not refused anything," has provided proper records authorizations to Defendants, and has provided Defendants with "medical records she obtained from the medical providers she saw from January 1, 2012, to the time of the collision."[132]

Pursuant to Rule 16(b)(4), the Court's scheduling order may be modified only for good cause and with the Court's consent.[133] Here, the Court finds good cause to grant Defendants' request. Plaintiff's response offers the Court no clarification regarding what Plaintiff has provided to Defendants. Moreover, Plaintiff's contention that she "has not refused anything" is false, considering Plaintiff refused to sign Defendant Molano's proposed records authorization forms and sought to quash Defendant Molano's discovery requests. It is clear that Plaintiff has fought Defendants on a number of discovery requests and the parties' disputes have slowed the progress of the case. Yet, the Court notes that much of this is attributable to the parties' refusal to resolve their discovery disputes without intervention by the Court. The parties are cautioned that such conduct will not be tolerated by this Court.

Accordingly, the Court hereby sets the following deadlines: **June 26, 2020** for Defendant's designation of experts; **July 31, 2020** for the close of discovery; **August 21, 2020**

---

[130] *Id.*
[131] Dkt. No. 31 at 2, ¶ 1.4.
[132] *Id.* at 3, ¶¶ 1.6–1.7.
[133] FED. R. CIV. P. 16(b)(4).

for all pretrial motions; **September 30, 2020** for the parties' joint pretrial order; and **October 19, 2020 at 9:00 a.m.** for the parties' final pretrial conference.[134]

## VIII. HOLDING

In light of the forgoing, the Court hereby **DENIES** Plaintiff's first[135] and second[136] motions to quash. The Court further **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to compel.[137] The Court hereby **ORDERS** Defendant Molano to serve on Plaintiff amended authorization forms by **Friday, April 3, 2020** and **ORDERS** Plaintiff to execute said forms by **Friday, April 10, 2020.**

The Court **GRANTS** Defendants' motion for leave to amend answers.[138] Finally, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' amended motion for extension of time as set out in this order.[139]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 1st day of April, 2020.

Micaela Alvarez
United States District Judge

---

[134] Dkt. No. 19.
[135] Dkt. No. 21.
[136] Dkt. No. 30.
[137] Dkt. No. 22.
[138] Dkt. No. 20.
[139] Dkt. No. 27.